UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

OLGA GARZA-DELGADO, §
§
　　　　Plaintiff §
VS. § CIVIL ACTION NO. 5:16-CV-49
§
UNITED INDEPENDENT SCHOOL §
DISTRICT, *et al.*, §
§
　　　　Defendants. §

## MEMORANDUM AND ORDER

Olga Garza-Delgado brought this case against her employer, United Independent School District (UISD), Ricardo Rodriguez, President of UISD, and Hector Perez, Executive Director of the UISD Information Technology Department. Plaintiff asserts discrimination, retaliation, and hostile-work-environment claims against Defendants under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act (ADEA), and the Family and Medical Leave Act (FMLA). (Dkt. No. 8). Defendants have moved for summary judgment, arguing that any employment actions taken against Plaintiff were based on legitimate, nondiscriminatory rationales, and that Plaintiff has not created a genuine issue of material fact as to whether those rationales were pretextual. (Dkt. Nos. 25; 31).

Having carefully considered all of the filings, evidence in the record, and applicable law, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment, (Dkt. No. 25), for the reasons explained below.

## I. BACKGROUND

Plaintiff Olga Garza-Delgado began working at UISD's Information

Technology Department in 1998. (Dkt. No. 25-2 at 2). The structure of the Department was as follows: J.J. Nuñez was Plaintiff's direct supervisor; Rene Cruz was one of several intermediate directors; and Hector Perez was in charge of the Information Technology Department. (Dkt. No. 29 at 2).

While working at UISD, Plaintiff requested maternity leave on three occasions: once in 2011, again in 2013, and finally in 2014. The first request was for the placement of a child for adoption or foster care, and the second two were for the births of her own children. (Dkt. No. 25-8 at 5–9, 12–15). Although all of Plaintiff's FMLA-leave requests were granted, she contends that individuals working at UISD continuously harassed and discriminated against her as a result of each period of leave requested. (Dkt. No. 29 at 2–5).

In 2011, Plaintiff says that she heard from Nuñez that Cruz had asked Nuñez if he had ever gone to Plaintiff's house to ensure she was really there during her FMLA leave. (*Id.* at 4). Plaintiff also claims that she heard from other employees that they had heard from Nuñez that Perez had been asking whether it was necessary for Plaintiff to be on FMLA leave. (*Id.*). On another occasion, Plaintiff says that Nuñez told her that Perez had asked him whether there was a legal way to deny an employee's FMLA-leave request. (Dkt. No. 29-2 at 3).

In April 2013, while Plaintiff was nine-months pregnant, an air-conditioning unit servicing her work space malfunctioned. (Dkt. No. 29 at 5). Plaintiff informed Nuñez of the air conditioner because she found the consequent heat unbearable. Nuñez told Plaintiff that he had asked Perez to replace the unit, but Perez had said

2

that he would prefer to have it fixed. (*Id.*). The heat caused Plaintiff to take FMLA leave earlier than she had planned. (*Id.*). Soon thereafter, the unit was replaced. (*Id.*).

In June 2014, Plaintiff informed UISD that she wished to apply for FMLA leave to begin the following August for her second child's birth. (*Id.*). The following month, she did not receive some of her expected pay. (*Id.*). UISD subsequently issued Plaintiff two manual checks to cover that discrepancy. (*Id.* at 5–6).

During the same time period, Plaintiff was experiencing disciplinary issues at work. In May 2012, Plaintiff was placed on an employee Growth Plan because of a high number of formal reprimands over prior years, which stemmed from a record of excessive absences and tardiness at work. (Dkt. No. 25-3 at 18). Despite this, Plaintiff again had to be reprimanded for her continued tardiness. (*Id.*). Plaintiff was warned that future failure to abide by UISD policies could lead to additional disciplinary action, including termination. (*Id.*).

In December 2014, Nuñez and Perez met with Plaintiff to discuss her failure to report certain absences during a period of leave. (*Id.* at 20). Perez warned Plaintiff that failure to adhere to UISD's absence-reporting rules and other policies could lead to further disciplinary action, including termination. (*Id.*). Plaintiff claims that during this meeting Perez asked her whether she was "planning to be out on FMLA again." (Dkt. No. 29 at 6). Following the meeting, Plaintiff filed a formal grievance through the UISD mediation process. (*Id.* at 6, 9). That process ended in a mediation agreement, which required that all "parties to establish better

3

lines of communication and support," and ordered "[n]o retaliation[,] as per district policy." (*Id.* at 9).

In March 2015, American Fidelity Assurance Company called UISD and requested confirmation on a form it had received regarding Plaintiff. (Dkt. No. 25-3 at 24). The form ostensibly contained the authorization signature of a UISD Human Resources employee—that employee subsequently confirmed that she had not signed or filled out the form in question. (*Id.*). After investigating the matter, the UISD Administration became convinced that Plaintiff had submitted a falsified document to American Fidelity, and concluded that such activity failed to meet acceptable standards for UISD employees. (*Id.* 24–25). After this incident, Perez recommended that Plaintiff be terminated for her tardiness and excessive absences, falsification of a timecard, and misuse of UISD computers and login accounts for personal purposes. (Dkt. No. 29 at 12).

In April 2015, UISD informed Plaintiff of her termination, citing the fact that she was an at-will employee and could be dismissed for any reason not prohibited by law. (Dkt. No. 29 at 13). Several months later, though, Plaintiff was reinstated to a comparable position with UISD by the District's Board of Trustees. (Dkt. No. 25-6 at 2–3).

Following her termination, Plaintiff filed this lawsuit against Defendants, arguing that her termination was the culmination of the harassment she faced at UISD concerning her pregnancies and leave requests. (Dkt. No. 25-1 at 3–4). Defendants, however, argue that she was terminated for continuously violating

UISD policies. (Dkt. No. 31 at 3). Defendants have now moved for summary judgment. (Dkt. No. 25)

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All evidence is viewed in the light most favorable to the nonmovant. *Miller v. Metrocare Servs.*, 809 F.3d 827, 832 (5th Cir. 2016).

In considering a motion for summary judgment, the initial burden is on the movant to point to portions of the record that demonstrate the absence of a genuine dispute about a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the movant would not bear the burden of proof at trial on a particular claim, he meets his initial burden on summary judgment if he identifies an element of the claim for which the nonmovant has produced no evidence. *See Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992) (citing *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990)).

Once the movant has met his initial burden, the burden shifts to the

5

nonmovant to come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). Although the court draws all reasonable inferences in favor of the nonmovant, the nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a 'scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). Conjecture and speculation will not satisfy the non-movant's burden. *Little*, 37 F.3d at 1079.

## III. ANALYSIS

### A. Title VII and the Pregnancy Discrimination Act

Title VII of the Civil Rights Act makes it unlawful for an employer "to discharge any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). As amended by the Pregnancy Discrimination Act, the term "because of . . . sex" includes "because of or on the basis of pregnancy, childbirth, or related medical conditions." *Id.* § 2000e(k).

#### *1. Title VII Discrimination Claim*

Employers in a pregnancy-based sex-discrimination case are liable for disparate treatment if in taking an adverse employment action against an employee they were "actually motivated" by the employee's protected trait. *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 966 (5th Cir. 2016) (citing *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015)). Disparate treatment may be

proved either "(1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas* [*Corp. v. Green,* 411 U.S. 792 (1973)]." *Id.*

Plaintiff's Title VII-discrimination claim is based on the contention that she was fired because of her requests for maternity leave. Defendants disagree, arguing that Plaintiff has neither produced direct evidence to support her contention nor evidence sufficient to survive the *McDonnell Douglas* analysis.

a. *Direct Evidence*

"Direct evidence is evidence which, if believed, proves [disparate treatment] without inference or presumption." *Fairchild*, 815 F.3d at 966 (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005)). This includes any statement or document showing discriminatory motive on its face. *Jones*, 427 F.3d at 993.

Here, Plaintiff believes that Perez's and Cruz's inquiries and disciplinary actions regarding her constitute direct evidence of discrimination. (Dkt. No. 28 at 10–11). She insists that Perez and Cruz, despite not being her direct supervisors, both took disciplinary actions against her and asked repeatedly about her pregnancy plans. Given these inquiries, and the fact that Perez was the person who recommended her termination, Plaintiff maintains there is a direct connection between her termination and her pregnancies.

To substantiate these claims, Plaintiff points to her own declaration, the

memorandum wherein Perez recommended her termination, and several portions of the depositions. None of these exhibits or statements, however, reflect a facially discriminatory motive for Plaintiff's termination. Perez's memorandum delineates several non-pregnancy related reasons for recommending Plaintiff's termination, including excessive tardiness, falsifying a time card, and misuse of UISD computers. Moreover, Plaintiff admits to being told that she was fired for allegedly falsifying a document. (Dkt. No. 29 at 7, 12). As it relates to Perez's and Cruz's alleged inquiries regarding Plaintiff's pregnancy plans, these are also insufficient to qualify as direct evidence of discrimination because they require the factfinder to infer discriminatory intent when she was fired. *See Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993) ("Direct evidence is evidence which, if believed, proves the fact . . . without inference or presumption.").

Whether Defendants' proffered reasons for their actions are merely pretextual is irrelevant to the direct-evidence inquiry. At best, Plaintiff is attempting to show that there is a connection between her termination and her pregnancy by means of circumstantial evidence. The Court, therefore, turns to the *McDonnell Douglas* analysis in order to evaluate whether Plaintiff's circumstantial evidence of discrimination is sufficient to survive summary judgment.

### b. *McDonnell Douglas Framework*

Under the *McDonnell Douglas* burden-shifting framework, the plaintiff must first make out a prima facie case of discrimination. *Fairchild*, 815 F.3d at 967. Once the plaintiff carries her burden of proving a prima facie case of discrimination,

the employer then has an opportunity to provide a legitimate, nondiscriminatory reason for the disparate treatment. *Id.* "If the employer articulates such a reason, the plaintiff then has 'an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant [*i.e.,* the employer] were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Young,* 135 S. Ct. at 1345).

### c. *Prima Facie Case*

To make out her prima facie case, Plaintiff must show that she:

> (1) is a member of a protected group (pregnant women); (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was treated less favorably than other similarly situated, non-pregnant employees, or was replaced by a person who was not a member of her protected group.

*Reynolds v. Shady Brook Animal Hosp., Inc.,* No. 4:12-CV-2258, 2013 WL 5964564, at *3 (S.D. Tex. Nov. 7, 2013) (Ellison, J.) (first citing *McDonnell Douglas,* 411 U.S. at 802; then citing *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir. 2007)). Assuming, arguendo, that Plaintiff satisfied the first three elements, she has failed to provide even a scintilla of evidence as to the fourth.

Plaintiff's declaration and deposition testimony is replete with accusations that Defendants' actions were discriminatory. (Dkt. Nos. 28 at 10–11; 29 at 4, 6–7; 29-2 at 2–4). Missing from the record, though, is any evidence to suggest that non-pregnant, or even non-female, employees were treated any differently. Moreover, while Plaintiff has presented the Court with evidence that the role she vacated was subsequently filled by another woman, she presents no evidence as to whether that

9

woman was pregnant—the protected class that Plaintiff claims to have been a member of when she was terminated. Thus, Plaintiff has failed to satisfy the fourth element of her prima facie case on her Title VII-discrimination claim.

### d. *Legitimate, Nondiscriminatory Reasons*

Plaintiff's failure to make out her prima facie case, standing alone, would warrant granting Defendants' Motion for Summary Judgment. But even if Plaintiff had established a prima facie case of discrimination, Defendants have provided legitimate, nondiscriminatory reasons for terminating Plaintiff.

Citing to Plaintiff's termination packet, Defendants contend that Plaintiff was fired because of her falsification of documents and failure to adhere to district policies. Indeed, the termination packet contains numerous reprimand letters and other documentation describing Defendants' disciplinary issues with Plaintiff over the course of several years. (Dkt. No. 25-3). Plaintiff's response, however, focuses on the memorandum that recommended her termination, so the Court will start there.

On March 20, 2015, Perez wrote a memorandum recommending Plaintiff's termination because of her tardiness, excessive absences, and job performance. (Dkt. No. 29 at 12). Perez further noted that Plaintiff had been reprimanded for falsifying a time card and violated district policy by using her assigned computer for personal use. (*Id.*). These reasons are valid and supported by the evidence, which corroborates that Plaintiff received multiple formal reprimands between 2010 and 2012 for her record of excessive absences and tardiness during those years. For

example, Plaintiff was written up in 2010 for accumulating thirty-six absent days during the 2009–2010 school year, and again in 2012 for nineteen absent days and being tardy on thirty-four others during the 2011–2012 school year. (Dkt. No. 25-3 at 2–3, 15–17).

As a general matter, Defendants argue that Plaintiff was terminated for violating USID's policies and procedures during her employment. Evidence of Plaintiff's disciplinary history supports that explanation. (Dkt. No. 25-3). Defendants' most recent issue with Plaintiff, her alleged falsification of the document submitted to American Fidelity Assurance Company, appears to have been the tipping point that led to her termination, given her record and Defendants' repeated warnings against further policy violations.

In light of the above, the Court finds that Defendants have provided legitimate, nondiscriminatory reasons for terminating plaintiff.

### e. *Pretext*

Once an employer has pointed to a legitimate, nondiscriminatory basis for its actions, a plaintiff "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). A plaintiff may do this "'by showing that a discriminatory motive more likely motivated' her employer's decision . . . or 'that [her employer's] explanation is unworthy of credence.'" *Id.* (alterations in original) (quoting *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 589 (5th Cir. 1998), *reh'g granted*, 169 F.3d 215 (1999), *reinstated in pertinent part by* 182 F.3d

333 (1999)). Here, Plaintiff offers several pretext arguments.

First, Plaintiff argues that Defendants' partial reliance on letters of reprimand issued five years before she was terminated gives rise to an inference of unlawful discrimination. Plaintiff has provided a declaration of Rene de la Viña, the Union Representative for the Texas State Teachers Association who represented Plaintiff during the first two steps of UISD's grievance process after she was terminated, stating that it was the practice of UISD to only refer to a grievant's disciplinary history if it occurred within the fifteen days preceding a grievance-process meeting. (Dkt. No. 29 at 11). However, it does not follow from Viña's statement that UISD supervisors making employment decisions independent of the grievance process may not consider the totality of an employee's disciplinary history when determining whether to terminate an at-will employee who recently violated UISD policy. Plaintiff failed to provide the Court with any authority suggesting that UISD supervisors are barred from considering the totality of an employee's disciplinary history in making employment decisions. In fact, nothing suggests that UISD must review each violation of district policies without considering the employee's disciplinary history. This is especially true given that each letter of reprimand issued to Plaintiff warned about the possible repercussions of further violations of UISD policies. (Dkt. No. 25-3).

Second, Plaintiff maintains that the fact that she was sometimes disciplined by Hector Perez and Rene Cruz, rather than her direct supervisor, indicates that those disciplinary episodes were motivated by Defendants' discriminatory feelings

toward her. This argument is unconvincing. While J.J. Nuñez was Plaintiff's direct supervisor, Perez was Nuñez's supervisor and head of the Information Technology Department. (Dkt. No. 29 at 2). He had an interest in the discipline of all the employees working in his department, including Plaintiff. And while the UISD Information Technology Organizational Chart submitted by Plaintiff does not itself corroborate Cruz's ability to supervise Plaintiff's work conduct, Nuñez testified that during the time period at issue it was normal for managers to report to one another about employees' clock-in and clock-out times in order to tamp down on employee overtime hours. (Dkt. No. 29-1 at 13). Cruz's write ups of Plaintiff are consistent with this practice as they are all based on time-related infractions.

Third, Plaintiff argues that every one of the alleged wrongdoings for which she was terminated was refuted at Nuñez's deposition, where he stated that (1) he did not believe Plaintiff had falsified her time, (2) he consistently gave Plaintiff proficient evaluations, and (3) he did not know the precise reason why Plaintiff was terminated. (Dkt. Nos. 28 at 23–24; 29 at 11–10, 21). Those portions of Nuñez's deposition testimony, however, do not render Defendants' explanations unworthy of credence or show that the firing was motivated by discriminatory animus. While it is true that Plaintiff's yearly evaluations often reflected proficient employee performance, Plaintiff was not fired for her actual work performance but for repeated violations of UISD policy. Far from undermining Defendant's nondiscriminatory reasons for terminating Plaintiff, the evaluations actually corroborate them as the evaluations document Plaintiff's issues with attendance

13

and punctuality. (Dkt. No. 29 at 26–29).

Fourth, Plaintiff alleges that Defendants' discriminatory animus can be inferred from their handling of a broken air-conditioner in March 2013. Plaintiff's argument does not hold water. As was previously explained, Plaintiff's air-conditioning unit malfunctioned while she was nine-months pregnant, and the resultant heat caused her to take FMLA leave earlier than she had anticipated. (Dkt. No. 29 at 5). Plaintiff requested that Defendants replace her unit outright, but Defendants preferred to have the unit repaired. (*Id.*). The event ended with the unit being replaced while Plaintiff was on FMLA leave. (*Id.*). Neither in her pleadings does Plaintiff assert, nor by her evidence demonstrate, that Defendants would have approached fixing the air-conditioning unit in a different manner had Plaintiff not been a pregnant woman.[1] Defendants, on the other hand, have presented evidence that the air-conditioning affair was handled in accordance with other maintenance-request processes at UISD, and that the unit was replaced after it was determined through those pre-established processes that the unit could not be repaired. (Dkt. No. 29 at 16).

Finally, regarding the allegation that Plaintiff falsified another employee's

---

[1] The Pregnancy Discrimination Act does not require that employers accommodate every request of pregnant employees, but only that such employees be treated the same, for employment-related purposes, as other employees with respect to their ability or inability to work. *See Young*, 135 S. Ct. at 1354 ("[A] plaintiff alleging that the denial of an accommodation constituted disparate treatment under the Pregnancy Discrimination Act's second clause may make out a prima facie case by showing . . . that she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'"). Plaintiff has not shown that Defendants would have, or ever did, accommodate others in similar situations, and therefore would be unable to even make out a prima facie case of disparate treatment under a theory of non-accommodation.

name on the American Fidelity Assurance Company form, Plaintiff argues that the UISD Board's decision to reinstate her after the grievance-review process is convincing evidence that Defendants' initial actions were discriminatory. The Court disagrees. Even if Plaintiff did not actually falsify the document she was accused of forging a signature on, Defendants would have been justified in firing her if they had a genuine belief that she had done so. *See Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason. . . . Motive is the issue." (citing *De Anda v. St. Joseph Hosp.*, 671 F.2d 850, 854 n.6 (5th Cir. 1982))).

Ultimately, the Court finds that Plaintiff's arguments either lack merit or are backed by less than a scintilla of evidence. Plaintiff has failed to raise a genuine issue of material fact regarding whether Defendant's legitimate, nondiscriminatory reasons for terminating Plaintiff were mere pretexts for discrimination. Thus, summary judgment is **GRANTED** in favor of Defendant on this claim.

### 2. Title VII Retaliation Claim

Under Title VII, it is also unlawful "for an employer to discriminate against any of his employees . . . because [such employee] has opposed any practice made an unlawful employment practice by [42 U.S.C. § 2000e-2], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [42 U.S.C. Ch. 21, Subch. VI]." 42 U.S.C. § 2000e-3(a). To succeed on a Title VII retaliation claim, Plaintiff must show that (1) she engaged

in a protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Ackel v. Nat'l Commc'ns*, 339 F.3d 376, 384 (5th Cir. 2003) (citing *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003). Protected activity is defined as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Id.* (quoting *Green v. Adm'r of the Tulane Educ. Bd.*, 284 F.3d 642, 657 (5th Cir. 2002).

While Plaintiff asserts Title VII retaliation claims against Defendants, (Dkt. Nos. 8 at 3; 28 at 7–12), she has produced no evidence that she engaged in any protected activity. She has nowhere shown that, outside of this case, she made charges of, or otherwise participated in proceedings regarding, sex-based discrimination, let alone that such activities may have animated attempts to terminate her employment. Resultantly, Plaintiff's Title VII retaliation claim fails, and Defendants are **GRANTED** summary judgment on this claim.

### 3. Title VII Hostile Work Environment Claim

A plaintiff may establish a hostile work environment claim under Title VII by proving that: "(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her [membership in a protected group]; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial

action." *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (first citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001); then citing *Jones v. Flagship Int'l*, 793 F.2d 714, 719–20 (5th Cir. 1986)) (describing the elements of a hostile-work-environment claim based on racial discrimination). In order to affect a term, condition, or privilege of employment, the harassment complained of must have been "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.*; *accord Brown v. Liberty Mut. Grp., Inc.*, 616 F. App'x 654, 657–58 (5th Cir. 2015) (applying the *Ramsey* hostile-work-environment formulation in the context of a woman claiming harassment during her pregnancy). Factors relevant to the consideration of this issue are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013).

In this case, Plaintiff claims that she was the target of severe and pervasive harassment during her pregnancies, while on leave, and at times in between. (Dkt. Nos. 8 at 3; 28 at 27). In support of this claim, Plaintiff points to the litany of reprimands she received for being absent from and arriving late to work, the manner in which Defendants chose to repair the malfunctioning air-conditioning unit used by Plaintiff, a pay discrepancy in July 2014, and the constant questions concerning her plans to apply for more leave.

17

These facts, taken as true, are not sufficiently severe or pervasive to establish a hostile work environment for purposes of Title VII. First, it is hard to see how reprimands that were justified could undergird a hostile-work-environment claim; and even if they were unjustified, they would not sustain Plaintiff's claim. *See Kang v. Bd. of Supervisors of La. State Univ.*, 75 F. App'x 974, 976–77 (5th Cir. 2003) (holding that receiving poor performance evaluations, being unjustly criticized in front of one's peers, and being written up for unsatisfactory conduct are not sufficiently severe or pervasive harassment to support a hostile-work-environment claim). Second, the pay discrepancy, which Plaintiff claims was quite disruptive, was corrected by manual checks within a month. Third, while verbal harassment can create a hostile work environment, the relatively few, and staid manner of, questions Plaintiff was asked and *heard* were being asked about her plans to take leave do not rise to that level. *Cf. Brown v. Liberty Mut. Group, Inc.*, 616 F. App'x at 657–58 (first citing *Kang v. Bd. of Supervisors of La. State Univ.*, 75 F. App'x at 976–77; then citing *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326–29 (5th Cir. 2004); and then citing *Shepherd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 872–73, 875 (5th Cir. 1999)) (aggregating cases in which the Fifth Circuit concluded that harassment alleged by plaintiffs was insufficiently pervasive or severe to make out a hostile-work-environment claim under Title VII). Finally, as to the broken air conditioner, even if working in heat could be severe enough to justify a hostile-work-environment claim, there is no evidence that Perez's refusal to replace it had any causal relation to Plaintiff's

pregnancy—Defendants simply made a business decision to attempt replacing the broken part before replacing the entire unit.

In light of the foregoing, the Court hereby **GRANTS** summary judgment in Defendants' favor on Plaintiff's hostile-work-environment claims based on Title VII.

## B. Age Discrimination in Employment Act

The Age Discrimination in Employment Act prohibits employers from taking adverse employment actions against employees because of an employee's age. 29 U.S.C. § 623(a). Unlike in the Title VII context, "a plaintiff alleging age discrimination under the ADEA has the burden of proving that age was the 'but-for cause' of the adverse employment action, such as the discharge or failure to hire." *Leal v. McHugh*, 731 F.3d 405, 411 (5th Cir. 2013). In other words, Plaintiff must prove that age was *the* reason that the employer decided to act, rather than that it was merely one motivating factor. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). In ADEA cases, "[t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Gross*, 557 U.S. at 180.

Plaintiff's only argument in support of the age discrimination claim is that she was above the age of forty, had received positive yearly evaluations of her work performance, and was replaced by someone younger. This, alone, is not enough. As the Court has already noted, Defendants' have provided legitimate, nondiscriminatory reasons for Plaintiff's discharge, and Plaintiff has been unable to

19

show that those rationales were mere pretexts for discrimination.

Plaintiff's ADEA claim fails to satisfy the but-for causation requirement of ADEA claims. Thus, the Court **GRANTS** summary judgment on this claim in favor of Defendants.

### C. Family and Medical Leave Act

Congress enacted the FMLA to permit eligible employees "to take reasonable leave for medical reasons." *Elsensohn v. St. Tammany Par. Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (per curiam) (citing 29 U.S.C. § 2601(b)(2)). The FMLA contains two sets of provisions. The first is prescriptive, creating a set of substantive rights that employers cannot interfere with.[2] *Id.* The second is proscriptive, protecting employees from retaliation based on the exercise of those rights.[3] *Id.* Plaintiff alleges that Defendants violated the FMLA by interfering with her FMLA rights, retaliating against her for exercising those rights, and creating a hostile work environment regarding her exercise of those rights.

#### 1. FMLA Interference Claim

In order to succeed on an FMLA interference claim, Plaintiff must prove that "(1) [s]he was an eligible employee; (2) [her] employer was subject to FMLA requirements; (3) [s]he was entitled to leave; (4) [s]he gave proper notice of [her] intention to take FMLA leave; and (5) [her] employer denied [her] benefits to which

---

[2] "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

[3] "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

[s]he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

Defendants point out that Plaintiff requested FMLA leave in August 2011, March 2013, and August 2014, and that each request was granted. At the end of each period of leave, Plaintiff returned to work and was reinstated to her former position with the same benefits and terms. Since Plaintiff was not denied FMLA leave, Defendants argue that her interference claim must fail.

Plaintiff does not deny that she was granted leave and appropriately reinstated following her return. Instead, she cites to 29 C.F.R. § 825.220(b) to support her claim. Section 825.220(b) states that interfering with an employee's rights "include[s] . . . not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Id.* Plaintiff maintains that she was terminated after constant harassment over whether she "needed to be a parent" or whether she planned on taking more FMLA leave in the future. (Dkt. Nos. 28 at 16; 29 at 4–7). She alleges that she was asked this question a month before being terminated and insists that she was fired because she refused to provide an answer about her future plans. (Dkt. No. 28 at 16).

The Court holds that Plaintiff has failed to show either that Defendants refused to authorize her FMLA leave or discouraged her from using such leave. All of her requests for FMLA leave were granted. There is no evidence that Plaintiff's FMLA leave was shortened or hindered in any manner or that Defendants attempted to discourage Plaintiff from taking FMLA leave when she requested it.

Moreover, Plaintiff's contention that her FMLA rights were interfered with because she was fired a month after being asked whether she would be taking additional FMLA leave is mere conjecture—and far too speculative to survive summary judgment. Plaintiff essentially asserts that Defendants interfered with her FMLA rights by firing her before she could ask for leave in the future. But this ignores the requirement that a plaintiff needs to be entitled to leave at the time that her FMLA rights were allegedly interfered with.

Accordingly, the Court **GRANTS** summary judgment in Defendants' favor on Plaintiff's FMLA interference claim.

### 2. FMLA Retaliation Claim

In the absence of direct evidence that an employment action was taken on the basis of retaliatory animus, an FMLA-retaliation claim is analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *Richardson v. Monitronics Int'l, Inc.* 434 F.3d 327, 332–33 (5th Cir. 2005). A plaintiff asserting an FMLA-retaliation claim must first show that (1) she was protected under the FMLA at the time of the conduct complained of, (2) she suffered an adverse employment action, and (3) the adverse action was taken because she sought protection under the FMLA. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013). Once a plaintiff makes out a prima facie case, the burden shifts to the employer to produce a legitimate, non-retaliatory reason for the adverse employment action. *Richardson*, 434 F.3d at 332. If a legitimate reason is put forward, the plaintiff must offer sufficient evidence to create a genuine issue of fact as to whether the

employer's proffered reason "is merely a pretext for retaliation or, 'although true, is but one of the reasons for its conduct, another of which was discrimination.'" *Garcia v. Penske Logistics, L.L.C.*, 165 F. Supp. 3d 542, 558 (S.D. Tex. 2014) (Marmolejo, J.) (quoting *Richardson*, 434 F.3d at 333), *aff'd* 631 F. App'x 204 (5th Cir. 2014).

The analysis for this claim proceeds as did the analysis for Plaintiff's Title VII discrimination claim. *See supra* Sections III.A.1.d–e. As was already stated, Defendants have provided legitimate reasons for their employment actions against Plaintiff, and Plaintiff has failed to present sufficient evidence for a reasonable factfinder to conclude that Defendant's proffered reasons served as pretext to act on a retaliatory animus toward Plaintiff. The Court therefore **GRANTS** summary judgment in Defendants' favor as to Plaintiff's FMLA retaliation claim.

### 3. FMLA Hostile Work Environment Claim

The Fifth Circuit has never recognized an independent claim for a hostile work environment in the FMLA context. *See Smith-Schrenk v. Genon Energy Servs., L.L.C.*, Civ. Action No. H-13-2902, 2015 WL 150727, at *4 n.60 (S.D. Tex. Jan. 12, 2015) (Miller, J.) (noting that the court could not find any case where a federal court has recognized an FMLA cause of action based on a hostile work environment). Nor has Plaintiff put forward any arguments suggesting that one should be recognized.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants' Motion for Summary Judgement (Dkt. No. 25) is **GRANTED**, and all of Plaintiff's claims against Defendants are

dismissed with prejudice.   Final Judgment in favor of Defendants will accompany this Order.

It is so **ORDERED.**

**SIGNED** September 27, 2017.

_Marina Garcia Marmolejo_
Marina Garcia Marmolejo
United States District Judge